IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



| | |
|---|---|
| KIMBERLY R. ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:16-cv-173 |
| ) | |
| TOYOTA MOTOR SALES, U.S.A., INC. ) | **TRIAL BY JURY DEMANDED** |
| ) | |
| Defendant. ) | |

# COMPLAINT

Plaintiff Kimberly R. Robinson ("Robinson"), by counsel, respectfully represents unto the Court as follows:

*Jurisdiction and Venue*

1. This is a civil action invoking rights founded in state law, but between citizens of different states and with more than $75,000.00 in dispute. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

*Parties*

2. Robinson is an adult female who resides in Chesterfield County, Virginia.

3. Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota"), is corporation chartered and headquartered in California, that regularly conducts business in the Commonwealth of Virginia

1

*Facts Common to All Counts*

4. Toyota is a manufacturer and seller, in the United States, of automobiles designed for ownership and use by individuals.

5. For several years leading up to, through, beyond and including its 2009 model year, Toyota sold automobiles under various model names, including the Camry sedan, with full and actual knowledge that those automobiles suffered from design and/or manufacturing defects that could cause them to accelerate autonomously, suddenly, without warning ("the unintended acceleration problem"), and with resulting great danger to their drivers and passengers, as well as other travelers on the roadways.

6. Under applicable federal law, and in particular 49 U.S.C. §§ 30118(c)(1) and 30102(a)(8), Toyota was required to disclose to the federal government (specifically the National Highway Traffic Safety Administration ("NHTSA")) and therefore, to all persons and in particular to the owners and users of automobiles it had sold, any defects that would or could present unreasonable risk of accidents or unreasonable risk of death or injury in accidents, or otherwise relate to motor vehicle safety.

7. During and after 2009, Toyota, despite its full and actual knowledge of the defects alleged above, Toyota failed to comply with federal law and did not make full or truthful disclosures to the NHTSA or otherwise.

8. To the contrary, Toyota knowingly and willfully undertook an affirmative effort to conceal information in its possession about the defects in its cars, and mislead current owners, potential future owners, users, passengers and others about the defects in its cars, including but not limited to 2009 model year Camrys.

9. Even after several accidents caused by the defects were heavily publicized, Toyota continued to conceal the truthful information in its possession and to disseminate untruthful information, motivated by a desire to maintain its brand's public standing and in wholesale disregard for the safety of owners, users, and passengers of its vehicles as well as the safety of others on the public roadways.

10. The specific defects which Toyota knew could lead to the unintended acceleration problem were (i) "floor mat entrapment," where the driver's floor mat could be positioned in such a way as to depress the car's accelerator pedal even if the driver were not applying pressure, and (ii) the "sticky accelerator problem," where the accelerator would get stuck in the depressed position even after a driver released it from pressure.

11. Toyota continued with its activities to conceal truthful information, disseminate untruthful information, mislead the NHTSA and U.S. consumers, and otherwise violate its statutory duties, through and including March 2014, at which time Toyota confessed to its course of misconduct and admitted that it was guilty of federal crimes, i.e., that it had willfully violated the law. A copy of the March 19, Deferred Prosecution Agreement, containing Toyota's admissions and confessions, is attached as Exhibit A and incorporated by reference into this Complaint.

12. On or about February 18, 2013, Robinson purchased a used 2009 model year Toyota Camry for her personal use. Robinson bought her Camry from a Carmax dealership in Chesterfield County, Virginia.

13. The Camry purchased by Robinson was manufactured by Toyota during the period when several Toyota model designs, including the Camry, suffered from the unintended acceleration problem defects.

14. Robinson purchased her Camry before Toyota confessed its guilt with respect to federal laws, before Toyota ceased its public misrepresentations and concealment, before Toyota began providing to the public truthful and complete information about the unintended acceleration problem. As a result, Robinson was unaware at the time of her purchase of the fact that her Camry could well suffer from the unintended acceleration problem.

15. On or about March 5, 2013, Robinson was driving her Camry in an ordinary manner when, after she had come to a stop, it began accelerating uncontrollably, jerking forward.

16. When Robinson reported the problem she had experienced to the Carmax dealership, dealership personnel discovered that her car was subject to a recall notice. Carmax then had Robinson's car delivered to Haley Toyota, a Chesterfield County dealership that Toyota had designated as its local agent and representative for purposes of performing recall corrective services. Haley, as Toyota's chosen agent and on behalf of Toyota, undertook a floor mat adjustment prescribed by Toyota, then returned the Camry to Carmax for it to return, in turn, to Robinson, on or about March 14, 2013.

17. On or before March 14, 2013, Toyota (either directly or through its designated agents) had actual knowledge that Robinson's Camry suffered from one or both of the defects that caused the unintended acceleration problem, and that Robinson was therefore a specific person endangered by the defects.

18. Notwithstanding this knowledge, Toyota did not provide to Robinson full and truthful information that it possessed with respect to the scope of the defects or the full range of repairs that might be necessary to prevent recurrence of the unintended acceleration problem, and failed to warn Robinson in any way that her safety was still at risk.

19. To the contrary, Toyota, through its agent Haley, affirmatively misrepresented to Robinson that any problems with her Camry had been fully resolved by Haley's repair efforts.

20. As a result, Robinson was led to believe that her Camry would not suffer a recurrence of the unintended acceleration problem, and that she could therefore drive her Camry safely and with confidence.

21. On April 4, 2013, Robinson was again driving her Camry along Charter Colony Drive in Chesterfield County, Virginia. As she approached the stop sign at an intersection with Woolridge Road, she removed her right foot from the accelerator pedal and used that foot to depress the brake pedal so as to bring her car to the required stop. The Camry did not stop, however, but instead, jolted forward, uncontrollably accelerating through the intersection, off the roadway, and up an embankment; the incline, combined with contact with a tree, brush and other vegetation, finally brought the Camry to a stop ("the accident").

22. As a result of the accident, Robinson suffered multiple injuries, including to her lower back, right ankle, and right knee, as well as general soreness and stiffness.

23. Robinson thereby suffered pain, suffering, temporary disability, and medical bills as a result of the injuries caused by the accident.

24. Robinson's damages total $250,000.00.

### Count I – Breach of Duty/Negligence

25. Paragraphs 1-24 are realleged.

26. Under the federal laws alleged above, Toyota owed duties of care to a class of purchasers, owners, users, passengers and others possibly affected by operation of the cars sold with the unintended acceleration problem. Toyota specifically owed duties to divulge all truthful information in its possession and to make no misrepresentations with respect to the defects, their causes, the advisability of having repairs undertaken to prevent harm, and any other information that might help prevent accidents from arising due to the known defects. Toyota also owed duties to persons whom it knew or had reason to know actually owned an affected vehicle and would therefore likely be endangered by the unintended acceleration problem.

27. Robinson is one of the people protected by Toyota's duties under federal law as alleged.

28. When Toyota sold the Camry, it did so with implied warranties of merchantability, fitness for the particular purpose for which it was intended (namely, safe driving on public roadways), and other warranties pursuant to the Virginia Uniform Commercial Code's Article 2.

29. Robinson, as a later purchaser of the Camry, was an obligee of Toyota's warranties under the UCC, and Toyota therefore owed her a further duty of care.

30. Through its nondisclosures, active concealment, affirmatively misleading statements, failure to implement a timely and comprehensive recall and safety remediation plan

sufficient to cure the defects present in Robinson's Camry, through its failure to warn Robinson of the known defects and its affirmative misrepresentation to the effect that a cure had been effected when it had not, Toyota breached the duties of care that it owed to Robinson.

31. By breaching its duties of care owed to Robinson, Toyota was negligent.

32. Toyota's negligence as alleged caused the accident and therefore, all injuries and damages suffered by Robinson.

33. Robinson's damages total $250,000.00.

### Count II – Actual Fraud

34. Pararaphs 1-33 are realleged.

35. Robinson relied upon Toyota's representations as to the safety of her Camry when purchasing it, when driving it, and in particular, when driving it following the supposed repairs undertaken by Toyota through its agent.

36. Robinson would not have continued driving her Camry had Toyota not made its intentional and affirmative representations, engaged in active concealment, and otherwise misled Robinson into doing so.

37. Toyota, through its actions as alleged, actually defrauded Robinson into purchasing and then driving and continuing to drive the Camry, leading to the accident and therefore, to Robinson's suffering her damages as alleged.

38. Toyota committed this actual fraud upon Robinson willfully, maliciously, and with complete disregard for her rights and her safety as well as for state and federal laws

(both civil and penal), for no reason other than to spare itself a diminution in its reputation and therefore, its profitability.

## Count III – Constructive Fraud

39. Paragraphs 1-36 are realleged.

40. In the alternative, Robinson alleges that Toyota may have believed that the repairs it had undertaken (through its agent) to Robinson's Camry were or would be sufficient to resolve the unintended acceleration problem. Nonetheless, Toyota failed to verify that the repairs actually had effectively resolved the problem, and in this failure, Toyota was negligent.

41. Toyota's negligence as alleged led it, through its agent, to misrepresent to Robinson that her Camry had been made safe to drive when in fact, it had not.

42. Toyota, through its actions as alleged, constructively defrauded Robinson into purchasing and then driving and continuing to drive the Camry, leading to the accident and therefore, to Robinson's suffering her damages as alleged.

## Count IV – Breach of Duty/Negligence in Repair Attempt

43. Paragraphs 1-36 are realleged.

44. In the alternative, Robinson alleges that Toyota, through its designated agent, the Haley dealership, undertook repairs that should have been sufficient to resolve the unintended acceleration problem, but undertook those repairs insufficiently and inadequately, then failed to verify after the fact that the repair attempt had effectively resolved the problem.

45. In its performance of the repairs to Robinson's Camry in March 2013, Toyota was negligent.

46. Toyota's negligence as alleged led it to return the Camry to Robinson with all parties intending that she would resume driving it, when in fact the Camry had not been effectively repaired sufficiently and remained unsafe to drive.

47. Toyota, through its negligent actions as alleged, caused Robinson to resume driving the Camry, leading to the accident and therefore, to Robinson's suffering her damages as alleged.

WHEREFORE, plaintiff Kimberly R. Robinson prays that this Court will grant her judgment against defendant Toyota Motor Sales, U.S.A., Inc., in the amount of $250,000.00 in compensatory damages, plus $350,000.00 in punitive damages, all legal expenses incurred (including but not limited to attorney's fees), interest and all costs.

TRIAL BY JURY IS DEMANDED.

KIMBERLY R. ROBINSON

By _____
         Counsel

Bradley P. Marrs (VSB#25281)
Patrick C. Henry II (VBS#80468)
Marrs & Henry
7202 Glen Forest Drive, Suite 307
Richmond, VA 23226
(804) 662-5715
(804) 662-5712 (fax)
bmarrs@marrs-henry.com
phenry@marrs-henry.com

.

9